## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NJIDENWA EJIKEME, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action File |
| | ) | No. _____ |
| MEYER CORPORATION, U.S., | ) | |
| WALMART INC. (f/k/a WAL- | ) | |
| MART STORES, INC.), | ) | |
| SPECTRUM BRANDS, INC. (f/k/a | ) | |
| APPLICA CONSUMER PRODUCTS | ) | |
| INC.), and FARBERWARE | ) | |
| LICENSING COMPANY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

COMES NOW NJIDENWA EJIKEME, individually, by and through undersigned counsel, and hereby file this **Complaint for Damages and Jury Trial Demand**, respectfully showing the following:

### I.      INTRODUCTION

1.      This is a diversity-based action seeking recovery for substantial personal injuries and damages suffered by Plaintiff Njidenwa Ejikeme after a Farberware Stovetop Pressure Cooker (code 46689; batch 17 06 01HI - 7-quart body

capacity, 8-quart cooker volume) (hereinafter the "subject Pressure Cooker") that was designed, manufactured, marketed and sold by and through Defendants, Meyer Corporation, U.S., Walmart Inc., Spectrum Brands, Inc. and Farberware Licensing Company, LLC, exploded and caused hot liquid and other contents to be discharged and severely burn her body. The subject incident happened in Atlanta, Fulton County, Georgia, and this case is brought under the substantive product liability and negligence laws of the State of Georgia.

## II.   PARTIES, JURISDICTION, SERVICE AND VENUE

2.   Plaintiff Njidenwa Ejikeme (hereinafter "Ms. Ejikeme"), is an adult citizen of the State of Georgia and a resident of Cobb County, Georgia. By filing this action, Ms. Ejikeme avails herself of the jurisdiction and venue of this Court.

3.   Defendant Meyer Corporation, U.S. ("Meyer") is a foreign corporation, incorporated under the laws of the State of Delaware, principally located in Vallejo, California, doing business in all fifty states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products in the State of Georgia, including but not limited to, the sale of the subject Pressure Cooker. Meyer knew at all relevant times that its products were (and are) being sold in the State of Georgia, for use by consumers in Georgia, and its product caused harm to Plaintiff

2

in the State of Georgia.  At all relevant times, Meyer was (and is) actively involved in the design, manufacture, promotion and sale of the subject Pressure Cooker (and similar models), which failed during foreseeable use and caused Plaintiff's injuries and damages.  At all relevant times, Meyer promoted, via television, internet and otherwise, the subject Pressure Cooker (and other similar models of pressure cookers) to be sold in all fifty states, including Georgia.  This Court has personal jurisdiction over Meyer because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia.  Defendant Meyer also maintains a registered agent for service of process in the State of California, Corporation Service Company d/b/a CSC-Lawyers Incorporating Serve, located at 12 2710 Gateway Oaks Drive, Suite 150N Sacramento, CA 95833-3505, where Meyer may be served with legal process in this case.[1]

4.      *Personal Jurisdiction over Defendant Meyer: Georgia's Long-Arm Statute*.  Defendant Meyer transacts within the state of Georgia.  Upon current information and belief, Defendant Meyer has agreements with retailers within

---

[1] However, Plaintiff's counsel will contact counsel for Meyer regarding accepting service of process of this Complaint, in which case Meyer may be served by Plaintiff's counsel contacting counsel for Meyer regarding accepting service of process of a file-stamped copy of this Complaint, or as otherwise allowed by law.

Georgia for distribution and sale of pressure cookers (including the subject Pressure Cooker) along with other Meyer products in Georgia and is thereby transacting business within this state. Meyer derives substantial revenue from goods sold and used in Georgia, regularly does or solicits business in Georgia, and caused an injury within this state by an act or omission outside of this state. Under Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Defendant Meyer.

5. *Personal Jurisdiction over Defendant Meyer: Due Process.* Defendant Meyer purposefully directed its activities at residents of Georgia by designing, manufacturing, marketing, distributing, and selling pressure cookers (including the subject Pressure Cooker) along with other Meyer products within the state of Georgia. Upon information and belief, it shipped, or participated in shipping, the subject Pressure Cooker, whose defective design caused Plaintiff's injuries, with reasonable expectation that it could or would find its way to Georgia through the stream of commerce. Its business is affected by pressure cookers and other products sold in Georgia. Defendant Meyer's actions in designing, manufacturing, marketing, distributing, and selling pressure cookers (including the subject Pressure Cooker) and other products directly and/or by and through sales agreements should have led

it to reasonably anticipate being hauled into court here.  Meyer's acts manifested an intention to submit to and be protected by the laws of Georgia.  In short, Meyer purposefully availed itself of the privilege of conducting activities in this state through contacts with this state and those contacts led directly to this litigation. Exercising personal jurisdiction over Defendant Meyer comports with due process.

6.    Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") is a foreign corporation, incorporated under the laws of the State of Delaware, principally located in Bentonville, Arkansas, doing business in all fifty states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products in the State of Georgia, including but not limited to, the sale of the subject Pressure Cooker.  Walmart knew at all relevant times that its products were (and are) being sold in the State of Georgia, for usen by consumers in Georgia, and its product caused harm to Plaintiff in the State of Georgia.  At all relevant times, Walmart was (and is) actively involved in the design, manufacture, promotion and sale of the subject Pressure Cooker (and similar models), which failed during foreseeable use and caused Plaintiff's injuries and damages.  At all relevant times, Walmart promoted, via television, internet and otherwise, the subject Pressure Cooker (and other similar models of pressure cookers) to be sold in all fifty states,

including Georgia.  This Court has personal jurisdiction over Walmart because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia.  Defendant Walmart also maintains a registered agent for service of process in the State of Georgia, The Corporation Company, located at 112 North Main Street, Cumming, Georgia 30040, where Walmart may be served with legal process in this case.

7.    *Personal Jurisdiction over Defendant Walmart: Georgia's Long-Arm Statute.*  Defendant Walmart transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, and regularly does or solicits business in Georgia.  It also maintains a registered agent to transact business in the State of Georgia, located at The Corporation Company, 112 North Main Street, Cumming, Forsyth County, Georgia 30040. Under Georgia law, a foreign corporation that is authorized to transact business in Georgia is a resident of this State and subject to direct personal jurisdiction in this State.[2]  Thus, this Court has direct personal jurisdiction over Defendant Walmart as

---

[2] *See* O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

a resident of this State in addition to long-arm personal jurisdiction over Defendant Walmart under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

8.   *Personal Jurisdiction over Defendant Walmart: Due Process.* Defendant Walmart derives revenue from sales of pressure cookers (including the subject Pressure Cooker) and other products within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia.  It shipped, or participated in shipping, pressure cookers (including the subject Pressure Cooker) and other products with the knowledge, intent and/or reasonable expectation that they would find their way to Georgia through the stream of commerce.  Its business is affected by pressure cooker and other product sales in Georgia.  In fact, Walmart maintains a registered agent to transact business in the State of Georgia.  Walmart's actions in marketing and selling pressure cookers (including the subject Pressure Cooker) and other products at locations throughout Georgia, and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being haled into Court here.  In short, Walmart has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.  Exercising personal jurisdiction over Walmart in this Court comports with due process.

9.      Defendant Spectrum Brands, Inc. f/k/a Applica Consumer Products, Inc. ("Spectrum") is a foreign corporation, incorporated under the laws of the State of Delaware, principally located in Middleton, Wisconsin, doing business in all fifty states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products in the State of Georgia, including but not limited to, the sale of the subject Pressure Cooker.  In 2014, Spectrum merged with Applica Consumer Products, Inc., a Florida corporation located at 3633 Flamingo Road, Miramar, Florida 33027.  Spectrum knew at all relevant times that its products were (and are) being sold in the State of Georgia, for use by consumers in Georgia, and its product caused harm to Plaintiff in the State of Georgia.  At all relevant times, Spectrum was (and is) actively involved in the design, manufacture, promotion and sale of the subject Pressure Cooker (and similar models), which failed during foreseeable use and caused Plaintiff's injuries and damages.  At all relevant times, Spectrum promoted, the subject Pressure Cooker (and other similar models of pressure cookers) to be sold in all fifty states, including Georgia.  This Court has personal jurisdiction over Spectrum because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia.  Defendant Spectrum also maintains a registered agent for

service of process in the State of Georgia, Corporation Service Company, located at

40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, where

Spectrum may be served with legal process in this case.

10.     *Personal Jurisdiction over Defendant Spectrum: Georgia's Long-Arm*

*Statute.*  Defendant Spectrum transacts business in the State of Georgia, derives

substantial revenue from goods sold, purchased and/or used in the State of Georgia,

and regularly does or solicits business in Georgia.  It also maintains a registered

agent to transact business in the State of Georgia, located at Corporation Service

Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

Under Georgia law, a foreign corporation that is authorized to transact business in

Georgia is a resident of this State and subject to direct personal jurisdiction in this

State.[3]  Thus, this Court has direct personal jurisdiction over Defendant Spectrum as

a resident of this State in addition to long-arm personal jurisdiction over Defendant

Spectrum under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

11.     *Personal Jurisdiction over Defendant Spectrum: Due Process.*

---

[3] *See* O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

Defendant Spectrum derives revenue from sales of pressure cookers (including the subject Pressure Cooker) and other products within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia. It shipped, or participated in shipping, pressure cookers (including the subject Pressure Cooker) and other products with the knowledge, intent and/or reasonable expectation that they would find their way to Georgia through the stream of commerce. Its business is affected by pressure cooker and other product sales in Georgia. In fact, Spectrum maintains a registered agent to transact business in the State of Georgia. Spectrum's actions in marketing and selling pressure cookers (including the subject Pressure Cooker) and other products at locations throughout Georgia, and maintaining a registered agent to transact business in Georgia, should have led it to reasonably anticipate being haled into Court here. In short, Spectrum has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice. Exercising personal jurisdiction over Spectrum in this Court comports with due process.

12.     Defendant Farberware Licensing Company, LLC. ("Farberware"), is a foreign limited liability company, incorporated under the laws of the State of Delaware, principally located in Needham, Massachusetts, doing business in all fifty

states, including Georgia, and deriving substantial revenue from ongoing and continuous sales of its products in the State of Georgia, including but not limited to, the sale of the subject Pressure Cooker. Farberware knew at all relevant times that its products were (and are) being sold in the State of Georgia, for use by consumers in Georgia, and its product caused harm to Plaintiff in the State of Georgia. At all relevant times, Farberware was (and is) actively involved in the design, manufacture, promotion and sale of the subject pressure cooker (and similar models), which failed during foreseeable use and caused Plaintiff's injuries and damages. At all relevant times, Farberware promoted, via television, internet and otherwise, the subject Pressure Cooker (and other similar models of pressure cookers) to be sold in all fifty states, including Georgia. This Court has personal jurisdiction over Farberware because of its continuous and systematic business contacts with the State of Georgia and because its product sold in Georgia caused harm in Georgia. Defendant Farberware also maintains a registered agent for service of process in the State of Massachusetts, Paul G. Roberts, located at 300 First Avenue, Suite 300, Needham, MA 02494, where Farberware may be served with legal process in this case.

13.    *Personal Jurisdiction over Defendant Farberware: Georgia's Long-Arm Statute.* Defendant Farberware transacts within the state of Georgia. Upon

current information and belief, Defendant Farberware has agreements with retailers within Georgia for distribution and sale of pressure cookers (including the subject Pressure Cooker) along with other Farberware products in Georgia and is thereby transacting business within this state.  Farberware derives substantial revenue from goods sold and used in Georgia, regularly does or solicits business in Georgia, and caused an injury within this state by an act or omission outside of this state.  Under Georgia's long-arm statute (O.C.G.A. § 9-10-91), this Court has personal jurisdiction over Defendant Farberware.

14.   *Personal Jurisdiction over Defendant Farberware:* Due Process. Defendant Farberware purposefully directed its activities at residents of Georgia by designing, manufacturing, marketing, distributing, and selling pressure cookers (including the subject Pressure Cooker) along with other Farberware products within the state of Georgia.  Upon information and belief, it shipped, or participated in shipping, the subject Pressure Cooker, whose defective design caused Plaintiff's injuries, with reasonable expectation that it could or would find its way to Georgia through the stream of commerce.  Its business is affected by pressure cookers and other products sold in Georgia.  Defendant Farberware's actions in designing, manufacturing, marketing, distributing, and selling pressure cookers (including the

subject Pressure Cooker) and other products directly and/or by and through sales agreements should have led it to reasonably anticipate being hauled into court here. Farberware's acts manifested an intention to submit to and be protected by the laws of Georgia.   In short, Farberware purposefully availed itself of the privilege of conducting activities in this state through contacts with this state and those contacts led directly to this litigation.   Exercising personal jurisdiction over Defendant Farberware comports with due process

15.    *Subject-Matter Jurisdiction*.  This Court has jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity between the parties.

16.    *Venue*.  Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 90(a)(2) and LR 3.1(B)(1)-(3), N.D.Ga., because Defendant Spectrum maintains a registered agent in Gwinnett County (which is within this District and Division), Plaintiff resides in Cobb County (which is within this District and Division), because a substantial part of the events, acts or omissions giving rise to the claims and Plaintiff's injuries occurred within Fulton County (which is within this District and

Division), and because Defendants regularly conduct business in this District and Division, including the promotion, sale and distribution of the subject Pressure Cooker and other similar models of pressure cookers, among other consumer goods.

17.   Based upon current information and belief, but without the benefit of fact discovery, and pleading in the alternative as permitted under Federal Rule of Civil Procedure 8, Plaintiff contends that one or all of the named Defendants, hereafter collectively referred to as the Defendants, concurrently caused, or separately caused, and/or contributed to the damages alleged herein.   Plaintiff reserves the right to dismiss any presently-named party and/or add any party(ies) to this lawsuit if discovery reveals that any named Defendant believed to be at fault is not at fault or that any unnamed entity is believed to be at fault after further facts are shown.

### III.   <u>OPERATIVE FACTS</u>

*A.*   *<u>The Subject Farberware Stovetop Pressure Cooker</u>*

18.   For a period of months before Ms. Ejikeme purchased the subject Pressure Cooker on or about January 28, 2018, Ms. Ejikeme viewed, on several different occasions, Defendants' advertising of the subject Pressure Cooker, wherein Defendants directly advertised and promoted for sale the subject Pressure Cooker to

users and consumers across the country, specifically including the Plaintiff in Atlanta, Fulton County, Georgia.

19. Therein, Defendants, represented and warranted to users and consumers across the country, and specifically to Ms. Ejikeme in Georgia, that the subject Pressure Cooker:

(a) Cooks foods from one-pot meals to side dishes faster;

(b) Has "built-in safety features" that include pressure regulator, visual indicators, and locking cover lid to ensure safe and easy stovetop pressure cooking;

(c) Is durable and easy to clean;

(d) Lid-locking features interior gasket for airtight seal;

(e) Has study handles and side helper handle for extra support with a filled cooker;

(f) Quality assurance guaranteed;

(g) Uses less energy and keeps more nutrients and flavors in foods;

(h) Has a sturdy aluminum construction for fast and even heating;

(i) In addition to the locking lid, safety features include two built-in indicators (on visual, one audible) and a valve that automatically regulates safe pressure inside the pot; and

15

(j) Open up the possibilities to fun family feasts with a versatile pressure cooker.

20.    Reasonably relying upon Defendants' representations and warranties regarding the safety and ease of use of the subject Pressure Cooker, Ms. Ejikeme purchased the subject Pressure Cooker at the Walmart store, located at 1100 Thornton Road, Lithia Springs, Georgia 30122, on January 28, 2018.

21.    The subject Pressure Cooker purports to be Defendants' SKU 46689, which, according to Defendants, is their 8-quart aluminum stovetop pressure cooker.

22.    Prior to making the subject Pressure Cooker available to Ms. Ejikeme for sale at Walmart, Defendants exercised substantial control over, and active involvement with, the design, manufacturing, testing, and quality assurance of its pressure cookers, including the subject Pressure Cooker.

23.    Upon information and belief, Defendants were present for or involved in all aspects of the development, design, engineering, manufacture and production of the product; and Defendants were solely responsible for approving all design changes to its pressure cookers, including the subject Pressure Cooker, and periodically made such engineering design changes to its pressure cookers, including

the subject Pressure Cooker, prior to its sale to Ms. Ejikeme.

24.     Prior to selling the subject Pressure Cooker to Ms. Ejikeme, Defendants were responsible for the content of its promotional and marketing materials, including those viewed by Ms. Ejikeme, and were responsible for the content of the materials accompanying its pressure cookers, including the instructions and warnings contained in its user's manual, recipe guides, and on-product labeling.

25.     Defendants represented and warranted to users and consumers, including Ms. Ejikeme, that its pressure cookers, including the subject Pressure Cooker, are designed with a "built-in safety features" system to prevent the product from pressurizing until the lid is secured in a locked position, that ensure excess pressure does not build up inside the pressure cooker and to prevent the lid from being removed until all pressure has been released.

26.     Defendants represented and warranted to users and consumers, including Ms. Ejikeme, that its pressure cookers, including the subject Pressure Cooker, are designed with a Multifunctional Safety Lock and Cover that "enables users to operate the pressure cooker in complete safety… The Multifunctional Safety Lock will release only if the pressure inside the cooker properly drops to a lower level… If the pressure cooker is improperly closed, the Multifunctional Safety Lock

17

will not allow internal cooking pressure to build up."

27.    Defendants represented and warranted to users and consumers, including Ms. Ejikeme, that its pressure cookers, including the subject Pressure Cooker, are designed with a Secondary Safety Device that "makes your pressure cooker completely safe even if the Pressure Regulator Knob fails to function due to overload or blockage…"

28.    Defendants represented and warranted to users and consumers, including Ms. Ejikeme, that its pressure cookers, including the subject Pressure Cooker, were "manufactured and inspected to ensure a high quality."

29.    Prior to the subject incident giving rise to this lawsuit, which occurred on or about October 2, 2019, Ms. Ejikeme read Defendants' Pressure Cooker Guide & Recipe's, which included Defendants' representations regarding the subject Pressure Cooker's alleged "built-in safety features".

30.    Prior to October 2, 2019, Ms. Ejikeme operated without incident the subject Pressure Cooker according to Defendants' instructions for use and express warranties and representations.

B.    *The Subject Explosion Incident*

31.    On or about October 2, 2019, Ms. Ejikeme endeavored to prepare beans

18

for her family at her home in Atlanta, Fulton County, Georgia, and decided to use the subject Pressure Cooker, among other things, for that purpose.  Relying upon Defendants' warranties and factual representations regarding the subject Pressure Cooker, Ms. Ejikeme reasonably believed the Pressure Cooker was incapable of pressurizing without its lid being placed in a fully locked position and that the lid could not come off if pressure remained inside the product.  Accordingly, Ms. Ejikeme used the Pressure Cooker to prepare food items in a manner intended and directed by Defendants.

32.    Despite operating the Pressure Cooker as intended and directed by Defendants, the heated contents of the Pressure Cooker suddenly and without warning exploded out of the Pressure Cooker and onto Ms. Ejikeme as she attempted to remove the lid.  As a result of the incident, Ms. Ejikeme was caused to suffer severe, painful burns, which necessitated medical treatment.  As a further result of the incident, Ms. Ejikeme suffers from permanent scarring, disfigurement, skin discoloration, lack of sensation, and sensitivity, among other injuries and damages.

33.    Upon information and belief, at the time of the subject incident, Defendants had previously and were actively and substantially engaged with, supervising, and participating with making a number of design changes to the subject

Pressure Cooker model line, including adding safety devices to the product, such as a longer lid-locking pin and more visible visual pressure indicator to prevent the product from opening under pressure, achieving pressure unless and until the lid was fully locked and ensuring users can easily see when the product's lid was safe to be opened.

34.    Despite Defendants knowledge of the defective condition of the subject Pressure Cooker at the time it left their control, Defendants failed to take any corrective action to prevent further harm, including the Plaintiff's harm, but instead continued to represent and warrant the product to be safe to increase their sales and profits.

35.    As detailed below, upon information and belief but without the benefit of fact discovery (and pleading in the alternative as specifically allowed by Fed. R. Civ. P. 8(d)), the subject Pressure Cooker, as designed and/or manufactured by Defendants, was negligently designed and/or manufactured, and defective in terms of its design, manufacturing and/or warnings, because as designed and manufactured by Defendants, the subject Pressure Cooker's lid was capable of (and did) explode and come off in the ordinary, foreseeable, proper use of cooking food with the product, without any adequate warning to the consumer that such a failure would

foreseeably occur.

36.     As a direct and proximate cause of the negligent design/manufacture and/or the design/manufacturing/warnings defects of the subject Pressure Cooker, Ms. Ejikeme sustained severe and painful burn injuries and damages to her body for which Defendants are liable.

37.     Defendants are, thus, either strictly liable and/or liable in negligence for all injuries and damages to Ms. Ejikeme related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

### IV.   LEGAL CLAIMS

**COUNT ONE – STRICT LIABILITY**
**EJIKEME V. MEYER CORPORATION, U.S., SPECTRUM BRANDS, INC. (F/K/A APPLICA CONSUMER PRODUCTS INC.) AND FARBERWARE LICENSING COMPANY, LLC**

38.     Plaintiff incorporates the preceding paragraphs verbatim into this Count.

39.     At all times material to the allegations in this Complaint, Meyer, Spectrum and Farberware were in the business of designing, manufacturing, marketing and selling pressure cookers and did design, manufacture, market and sell the subject Pressure Cooker giving rise to the subject matter of this lawsuit.

40.    Under O.C.G.A. § 51-1-11 and other applicable case law, Meyer, Spectrum and Farberware are strictly liable to Ms. Ejikeme for design defects because the risks inherent in the subject Pressure Cooker's design outweigh its utility, particularly given the availability of feasible, safer alternative designs that would not impair the pressure cooker's functionality.  Thus, under Georgia law, the subject Pressure Cooker is defective in its design.

41.    Meyer, Spectrum and Farberware knew, or should have known, at all times that as a manufacturer, designer, marketer and seller of new consumer products, the subject Pressure Cooker had to be designed, tested, manufactured and marketed so as to minimize risks versus utilities, and that with this product, there was grave risk of harm to the user if Meyer, Spectrum and/or Farberware failed to implement sufficient and reliable design components, safeguards, interlocks or other mechanisms to prevent the top of the cooker from opening while under pressure. The subject Pressure Cooker was and is defective by design because the design chosen by Meyer, Spectrum and Farberware allows that very danger to occur and lacks adequate safeguards to protect consumers from harm.

42.    Meyer, Spectrum and Farberware knew, or should have known, at all times that as a manufacturer, designer, marketer and seller of new consumer

products, the subject Pressure Cooker had to be designed, tested, manufactured and marketed so as to minimize risks versus utilities, and that with this product, there was grave risk of harm to the user if Meyer, Spectrum and/or Farberware failed to implement sufficient and reliable design components, safeguards, interlocks or other mechanisms to secure the lid while pressurized and/or prevent the scalding hot contents of the cooker from being released while under pressure. The subject Pressure Cooker was and is defective by design because the design chosen by Meyer, Spectrum and Farberware allows these very dangers to occur and lacks adequate safeguards to protect consumers from harm.

43.    Meyer, Spectrum and Farberware knew, or should have known, at all times that as a manufacturer, designer, marketer and seller of new consumer products, the subject Pressure Cooker had to be designed, tested, manufactured and marketed so as to minimize risks versus utilities, and that with this product, there was grave risk of harm to the user if Meyer, Spectrum and/or Farberware failed to implement sufficient and reliable design components, safeguards, interlocks or other mechanisms to prevent the pressure relief mechanisms from being clogged or blocked while in use, thereby creating unreasonable danger to unsuspecting user of an under-pressure opening. The subject Pressure Cooker was and is defective by

design because the design chosen by Meyer, Spectrum and Farberware allows that very danger to occur and lacks adequate safeguards to protect consumers from harm.

44.    Meyer, Spectrum and Farberware also marketed the subject Pressure Cooker in a defective manner in that Defendants failed to effectively warn or inform consumers of the unreasonably dangerous properties of the subject Pressure Cooker and methods by which consumers, such as the Plaintiff, could guard and/or mitigate such dangers.

45.    Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as specifically allowed by Fed R. Civ. P. 8(d), the design and warning defects alleged above were the proximate cause of Ms. Ejikeme's injuries and damages, but those injuries and damages were or may have also been the result of manufacturing defects in the subject Pressure Cooker which rendered the cooker unreasonably dangerous, and not reasonably safe, for its intended use, in that as fabricated and manufactured by Meyer, Spectrum and Farberware, the lid or top of the cooker and its adjacent or related components were made of materials, or in such dimensions, that they lost the integrity of their connection and seal so as to allow the pressurized top to explode and fly off the cooker along with the cooker's scalding hot contents.

46.   Meyer, Spectrum and Farberware are strictly liable for all injuries and damages to Ms. Ejikeme related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

## COUNT TWO – NEGLIGENCE
### EJIKEME V. MEYER CORPORATION, U.S., SPECTRUM BRANDS, INC. (F/K/A APPLICA CONSUMER PRODUCTS INC.) AND FARBERWARE LICENSING COMPANY, LLC

47.   Plaintiff incorporates the preceding paragraphs verbatim into this Count.

48.   Meyer, Spectrum and Farberware have a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses.  Meyer, Spectrum and Farberware also have a duty to adequately warn of dangers posed by a product's design.  These duties applied to the subject Pressure Cooker at issue in this case.

49.   Meyer, Spectrum and Farberware knew, or in the exercise of ordinary care should have known, that the subject Pressure Cooker was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used.  Meyer, Spectrum and

Farberware were negligent in the particulars set forth in this and the preceding Count.

50.    Meyer, Spectrum and Farberware knew, or in the exercise of ordinary care should have known, of the means of designing, manufacturing and marketing the subject pressure cooker such that the type of incident and resulting injuries and damages as described herein would be prevented.  Meyer, Spectrum and Farberware had actual knowledge of the means of designing a pressure cooker that would not be inadequate and dangerous.  Notwithstanding this knowledge, Meyer, Spectrum and Farberware failed to adequately design, equip and/or manufacture the subject Pressure Cooker.

51.    Meyer, Spectrum and Farberware were additionally negligent in that they failed to give adequate or proper warnings or instructions, and failed to make appropriate post-sale marketing efforts to prevent known incidents, such as the one detailed herein.

52.    Meyer, Spectrum and Farberware owed Ms. Ejikeme, as well as the public at large, the duty of reasonable care in designing, manufacturing and marketing the subject Pressure Cooker.  Meyer, Spectrum and Farberware failed to act as an ordinary prudent manufacturer in manufacturing the subject Pressure

Cooker and violated its duties and was negligent and said negligence includes those acts and/or omissions previously described herein.

53. Meyer, Spectrum and Farberware are liable for their negligence for all injuries and damages to Ms. Ejikeme related to this incident, in an amount well in excess of the jurisdictional minimum necessary to confer jurisdiction in this Court.

54. To the extent it is discovered in litigation that the acts and/or omissions of Meyer, Spectrum and/or Farberware described above are determined to be so egregious as to be willful, wanton and/or reckless within the meaning of Georgia law, Plaintiff reserves the right to seek punitive damages against any of the Meyer, Spectrum and/or Farberware (or any other entities that may be discovered in litigation). In the alternative, if it is discovered in litigation that Meyer, Spectrum and/or Farberware (or any other entities that may be discovered in litigation) committed acts and/or omissions that have not been described above but are, nonetheless, determined to be so egregious as to be willful, wanton and/or reckless within the meaning of Georgia law, Plaintiff reserves the right to seek punitive damages against Meyer, Spectrum and/or Farberware (or any other entities that may be discovered in litigation).

## COUNT THREE – NEGLIGENCE
## EJIKEME V. WALMART INC. (F/K/A WAL-MART STORES, INC.)

55.     Plaintiff incorporates the preceding paragraphs verbatim into this count.

56.     At all times pertinent to this Complaint, Walmart was in the business of marketing and selling Farberware pressure cookers to consumers directly.  Indeed, Walmart is the entity that marketed and sold the subject Pressure Cooker at issue in this lawsuit to Plaintiff on or about January 28, 2018.

57.     Walmart is a retailer that represents to the public on its website that Farberware pressure cookers, including the subject Pressure Cooker at issue in this lawsuit, have "built-in safety features."

58.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that its Farberware pressure cookers, including the subject Pressure Cooker, are designed with a "built-in safety features" system to prevent the product from pressurizing until the lid is secured in a locked position, that ensure excess pressure does not build up inside the pressure cooker, and that prevent the lid from being removed until all pressure has been released.

59.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that the built-in safety features in its Farberware pressure cookers, including the subject Pressure Cooker, "include pressure regulators, visual indicators, and locking cover lids to ensure safe and easy stovetop pressure cooking."

60.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that its Farberware pressure cookers, including the subject Pressure Cooker, are "durable."

61.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that its Farberware pressure cookers, including the subject Pressure Cooker's "locking lid features interior gasket for airtight seal."

62.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that its Farberware pressure cookers, including the subject Pressure Cooker's "sturdy handles provide a comfortable hold; side helper handle provides extra support with a filled cooker."

63.     Walmart represented and warranted the following to users and consumers, including Ms. Ejikeme, regarding its Farberware pressure cookers, including the subject Pressure Cooker: "Besides the locking lid, the safety features

include two built-in indicators one visual, one audible, and a valve that automatically and safely regulates pressure inside the pot."

64.     Walmart represented and warranted to users and consumers, including Ms. Ejikeme, that its Farberware pressure cookers, including the subject Pressure Cooker, are subject to a "Quality Assurance Guarantee."

65.     Walmart represented affirmatively that its Farberware pressure cookers, including the subject Pressure Cooker, were safe for use as a stovetop pressure cooker.

66.     Walmart, in making the representations and warranties to users and consumers, including Ms. Ejikeme, knew or should have known with the exercise of reasonable diligence, that users and consumers, including Ms. Ejikeme, were going to rely on its representations in making purchase decisions, including but not limited to, the statements made about the safety and reliability of its Farberware pressure cookers, including the subject Pressure Cooker.

67.     Based upon the nature of the representations Walmart made about the safety and fitness for use of its Farberware pressure cookers, including the subject Pressure Cooker, including but not limited to, the statements about it being safe, having built-in safety features and being durable, Ms. Ejikeme reasonably believed

30

that Walmart had conducted an inspection of the subject Pressure Cooker, or had otherwise taken affirmative steps to gain superior knowledge about the quality of its Farberware pressure cookers' components and safety features, in order to make such representations to her.

68.    Ms. Ejikeme reasonably relied on the representations and warranties made by Walmart, as it holds itself out to be experienced and knowledgeable about the products it sells, in making her purchase decision in regard to the subject Pressure Cooker, and belief that Walmart made such statements with knowledge that Ms. Ejikeme could, and would, rely upon them.

69.    As a seller of small kitchen appliances directly to the public that made affirmative representations to consumers about the condition, quality, safety and/or fitness for use of its Farberware pressure cookers, Walmart had assumed and/or undertook a duty to non-negligently inspect such pressure cookers, including the subject Pressure Cooker, for dangerous conditions, and inform or warn such consumers of foreseeable dangers from foreseeable use of the products, and not affirmatively mislead the consumer about the quality and safety of the product.

70.    Walmart breached the duties it had and/or assumed or undertook by (a) negligently inspecting its Farberware pressure cookers, including the subject

Pressure Cooker, about which it made affirmative representations to Ms. Ejikeme; and/or (b) negligently failing to warn or inform the consumer of dangers or deficiencies of the product, and the lid-locking/pressure release mechanisms in particular, of which Walmart had knowledge of, or with the exercise of reasonable care should have had knowledge of, such that Ms. Ejikeme could make an informed purchase decision; and/or (c) negligently representing to Ms. Ejikeme that the subject Pressure Cooker was safe and had numerous built-in safety features that would prevent it from releasing its contents while under pressure when Walmart knew, or with the exercise of reasonable care as a nationally-recognized retailer of small kitchen appliances should have known, was not accurate and was indeed misleading to Ms. Ejikeme.

71.    To the extent it is discovered in litigation that Walmart's acts and/or omissions described above are determined to be so egregious as to be willful, wanton and/or reckless within the meaning of Georgia law, Plaintiff reserves the right to seek punitive damages against Walmart.  In the alternative, if it is discovered in litigation that Walmart's committed acts and/or omissions that have not been described above but are, nonetheless, determined to be so egregious as to be willful,

wanton and/or reckless within the meaning of Georgia law, Plaintiff reserves the right to seek punitive damages against any of the Walmart.

## V.   **DAMAGES**

72.    Plaintiff incorporates the preceding paragraphs verbatim into this count.

73.    Plaintiff Njidenwa Ejikeme seeks damages from Defendants for past, present, and future medical bills and expenses, and other necessary expenses resulting from her incident-related injuries in amounts to be shown by the evidence adduced at trial.

74.    Plaintiff Njidenwa Ejikeme seeks damages from Defendants for all past, present, and future pain and suffering resulting from her incident-related injuries, in an amount as determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from her incident-related injuries, in amounts to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial.

75.    Plaintiff Njidenwa Ejikeme seeks damages from Defendants for the loss of full enjoyment of life, scarring and disfigurement she has suffered and will continue to suffer as a proximate cause of the incident and the injuries sustained

therein, in an amount to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial.

## VI.    <u>PRAYER FOR RELIEF</u>

76.    WHEREFORE, Plaintiff respectfully pray for judgment as follows:

    (a)    That the Court issue service of process to Defendants as authorized by law;

    (b)    That Defendants Answer this Complaint as provided by law;

    (c)    That Plaintiff has a trial by jury;

    (d)    That Plaintiff recovers from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendants, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

    (e)    That all costs be taxed against Defendants; and

    (f)    That the Court awards such other and further relief, as it shall deem just and appropriate.

## VII.   <u>JURY DEMAND</u>

77.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 18th day of December, 2020.

CONLEY GRIGGS PARTIN LLP

S/ *CALE CONLEY*

CALE CONLEY
Georgia Bar No. 181080
DAVIS POPPER
Georgia Bar No. 863530

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
(404) 467-1155
(404) 467-1166 (fax)
cale@conleygriggs.com
davis@conleygriggs.com

*To be Admitted Pro Hac Vice:*

MEYERS & FLOWERS, LLC
FRANK V. CESARONE, ESQ.
3 N. 2nd Street, Suite 300
St. Charles, Illinois 60174
(630) 232-6333
fvc@meyers-flowers.com